**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

WILLIAM TORREY,
10180 Teepee Trail
Iron River, WI 54847

        Plaintiff,

     v.

ATK ENTERPRISES, INC.,
c/o Its Registered Agent
1511 E. Superior Street
Duluth, MN 55812

    –and–

JAMES ORMAN,
1104 Minneapolis Avenue
Duluth, MN 55803

        Defendants.

Case No.: _____

---

## COMPLAINT

---

NOW COMES Plaintiff, William Torrey ("Torrey" or "Plaintiff"), by and through his attorneys, Barton Cerjak S.C., and for his Complaint against Defendants, ATK Enterprises, Inc. ("ATK") and James Orman ("Orman") (collectively, "Defendants"), alleges and states as follows:

### OVERVIEW

1.    This case arises from a contractor's decision to take full payment for work on a cherished family cabin, substitute cheaper materials for those specifically required by the parties' agreement, leave promised work unfinished, and then refuse to return to make things right.

2.      Torrey inherited the Cabin (defined *infra*) from his father in 2021. The Cabin had been in the family for more than 40 years, and Torrey sought to improve the property without destroying the natural character that made it special.

3.      To that end, Torrey hired ATK, through Orman, to complete work on the Cabin's docks and deck. Among other things, ATK agreed to build the Marine Dock (defined *infra*) using 6x6 foot posts, consistent with the existing Main Dock (defined *infra*) and the support Torrey specifically required. Torrey paid ATK for that work.

4.      ATK did not do what it promised. Instead of using 6x6 foot posts, ATK used 4x4 foot posts without telling Torrey and without obtaining his consent. ATK also failed to complete the Deck (defined *infra*) staining, failed to provide compliant written contracts and warranty documents, left materials exposed to the elements, and failed to return to correct or complete the work despite Torrey's repeated follow-up.

5.      In other words, Defendants accepted Torrey's money, failed to provide the materials and services promised, substituted inferior materials without consent, and left Torrey with unfinished and nonconforming work at his family property.

6.      Wisconsin law does not condone this conduct. Through this action, Torrey seeks to hold Defendants accountable and recover all remedies available under Wisconsin law.

### THE PARTIES

7.      On information and belief, Defendant, ATK Enterprises, Inc., is a foreign corporation organized under the laws of the state of Minnesota, with its principal place of business located at 4537 Lavaque Bypass Road, Hermantown, Minnesota 55811.

2

8.    On information and belief, Defendant, James Orman, is an adult resident of the state of Minnesota whose principal place of residence is located at 1104 Minneapolis Avenue, Duluth, Minnesota 55803. On information and belief, James Orman is an employee, officer, representative, and/or agent of ATK or otherwise participated in the home improvement contracts and work at issue in this action.

### JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(1) because the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.

10.    This Court has personal jurisdiction over Defendant, ATK, because it conducts substantial business in this District, intentionally and purposefully offers goods and services within this District, and a substantial part of the acts and omissions complained of occurred in this District.

11.    This Court has personal jurisdiction over Defendant, Orman, because he conducts substantial business in this District, intentionally and purposefully offers goods and services within this District, and a substantial part of the acts and omissions complained of occurred in this District.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because it is the district in which Orman resides, Plaintiff's claims arose based on Defendants' conduct within this District, and a substantial part of the acts and omissions complained of occurred in this District.

### FACTUAL ALLEGATIONS

#### The Cabin: A Family Property On Hart Lake

13.    The property at the heart of this matter is located at 10180 Teepee Trail, Iron River, Wisconsin 54847 (the "Cabin").

14.     Although Torrey now owns and resides at the Cabin, his father owned the property before him. The Cabin has been in the family for more than 40 years.

15.     The Cabin is approximately three quarters of an acre, is surrounded by trees on three sides, and sits only feet from Hart Lake.

16.     Upon entering the property from land, visitors first encounter a guest house referred to as the "Treehouse."

17.     After parking near the entrance, visitors walk along a pathway through a wild garden and the surrounding forest to reach the main cabin.

18.     The main cabin includes a near complete wall of windows facing Hart Lake, access to an extensive deck system directly outside the main cabin, and access to Hart Lake by descending only a few steps to the docks, as depicted below:



19.     The series of decks surrounding the main cabin include a walkway around the main cabin, a deck to the south, a sun deck to the southeast, a deck with a built-in barbeque to the east, a main deck to the northeast, and a balcony to the north, directly out from the bank of windows on the main cabin (collectively, the "Deck").

20. Steps down from the main cabin, there are three docks: the dock extending directly north from the Cabin on the eastern side (the "Main Dock"); the dock running from east to west on the north side of the main cabin (the "Boathouse Dock"); and the dock extending directly north from the Cabin on the western side (the "Marine Dock").

### Torrey Inherits The Cabin & Seeks To Improve It Without Destroying Its Character

21. In 2021, Torrey inherited the Cabin from his father.

22. Torrey works as an interior designer and, after inheriting the property, began planning improvements designed to emphasize the Cabin's natural beauty rather than overwhelm it.

23. To that end, Torrey raised the area on the west side of the main cabin, added a retaining wall around the equipment outside the main cabin, and planted multiple trees to build a forest on the property.

24. Torrey also planned additional improvements and embellishments to the Cabin so he could ultimately rent the Treehouse to guests and offer portions of the Cabin property as a wedding venue.

25. Critically, however, Torrey wanted to preserve the Cabin's longstanding aesthetic and ensure that any repairs and improvements complemented the surrounding scenery, including Hart Lake, the tree line, and the open sky above the property.

26. Although Torrey was able to perform some improvements to the Cabin himself, he ultimately needed a professional contractor to complete repairs and improvements he could not complete himself.

*ATK Sells Itself As A Professional Contractor*
*Capable Of Doing The Work*

27.     ATK is a company based near the Minnesota–Wisconsin border that provides comprehensive construction and excavation services.

28.     Specifically, ATK provides construction services on home renovations, including decks, cabins, and complete homes, among other commercial projects.[1]

29.     ATK touts its decades of experience in the industry and advertises a one-year workmanship warranty on its website.[2]

30.     Because of ATK's public representations, reputation, and willingness to complete work at the Cabin, Torrey contacted ATK for assistance with improving the property.

31.     Torrey initially discussed the projects he envisioned for the Cabin with Orman, who acted as a sales representative, employee, agent, and/or representative of ATK.

32.     Torrey later communicated and worked with Orman regarding payments to ATK, work performed at the Cabin, and work that remained to be completed.

### The Dock Projects

33.     On or around January 6, 2025, Torrey received a quote from Orman and ATK regarding work ATK would complete on the Marine Dock, which included building the Marine Dock using the same specifications of the Main Dock, including using 6x6 foot posts, for a cost of approximately $25,000 (the "Marine Dock Project").

---

[1] https://www.atkduluth.com/general-construction (last visited June 3, 2026); https://www.atkduluth.com/ (last visited June 3, 2026).
[2] https://www.atkduluth.com/ (last visited June 3, 2026).

34.     Torrey specifically requested that 6x6 posts be used for the Marine Dock because that is how the Main Dock had been built and because the dock needed to be rebuilt according to the specifications of the existing structure, particularly with respect to the support needed for the dock.

35.     Indeed, the notes of the quote for the Marine Dock Project specifically stated that 6x6 foot posts were to be used on the project.

36.     Further, the agreement regarding the Marine Dock Project specified that the posts would be installed by a "jet professional."

37.     Torrey paid ATK an advanced deposit for ATK to complete the Marine Dock Project as outlined in the quote and later remitted the remaining balance to ATK.

38.     Torrey also discussed another project with Orman concerning the Main Dock.

39.     Torrey ultimately contracted with ATK for approximately $11,000 to repair the Main Dock by adding new boards to the dock (the "Main Dock Project").

40.     As with the Marine Dock Project, Torrey and ATK discussed the specifications for the Main Dock at length.

41.     Torrey paid ATK an advanced deposit for ATK to complete the Main Dock Project and later remitted the remaining balance to ATK.

42.     Torrey paid ATK the full balance owed on both the Main and Marine Dock Projects (collectively, the "Dock Projects").

43.     Neither agreement regarding the Dock Projects specified the cost or hourly rate for labor on the projects or provided a time the work would start or be completed.

44.     Neither Dock Project agreement provided a written warranty from ATK, despite its' website repeatedly discussing a one year workmanship warranty.

7

*The Deck Project*

45.    On or around February 3, 2025, Torrey spoke with Orman and agreed with ATK for work ATK would complete on the Deck, including replacing old boards and pressure washing, sanding, and staining the Deck, for a total cost of approximately $25,000 (the "Deck Project").

46.    Torrey paid ATK an advanced deposit for ATK to complete the Deck Project and later remitted the remaining balance to ATK.

47.    Torrey paid ATK the full balance owed for the Deck Project.

48.    The Deck Project agreement did not specify the cost or hourly rate for labor on the project or provide a time the work would start or be completed.

49.    The Deck Project agreement did not provide a written warranty from ATK, despite its' website repeatedly discussing a one year workmanship warranty.

50.    ATK informed Torrey that it could not complete the staining process for the Deck for approximately a year because the wood needed to dry and/or be cured for a year before it could be properly stained.

### ATK Failed To Fully And Properly Complete The Projects As Defendants Promised

51.    In the Spring of 2026, Torrey surveyed the Cabin and identified numerous items that ATK either failed to complete or failed to complete properly.

52.    These items included the following, among others:

   a.    4x4 foot posts were used for the Marine Dock Project, instead of the 6x6 foot posts specified in the agreement;

   b.    the Deck and Dock were not stained, despite ATK's representation that it would return to do so; and

   c.    ATK was not a jet professional, ATK installed the Marine Dock posts, and as such the posts for the Marine Dock had not been installed by a jet professional as stated in the agreement.

8

53.     On information and belief, 6x6 foot posts are more expensive than 4x4 foot posts.

54.     Torrey paid ATK for 6x6 foot posts but 4x4 foot posts were used on the Marine Dock Project.

55.     Torrey did not approve the use of 4x4 foot posts in place of the 6x6 foot posts specified in the agreement for the Marine Dock Project.

56.     ATK did not inform Torrey it would use 4x4 foot posts instead of 6x6 foot posts for the Marine Dock Project.

57.     On information and belief, 4x4 foot posts were used on the Marine Dock Project instead of 6x6 foot posts either because (i) ATK could not source 6x6 foot posts or (ii) ATK intended to increase its profit margin on the Marine Dock Project by using cheaper materials without disclosing the substitution to Torrey.

58.     On information and belief, ATK did not intend on using 6x6 foot posts for the Marine Dock Project but accepted Torrey's advanced and final payments on the Marine Dock Project regardless.

59.     After identifying the numerous items outstanding on the Deck and Dock Projects (collectively, the "Projects"), Torrey alerted ATK and Orman to these problems.

60.     Torrey repeatedly followed up with ATK and Orman regarding these issues, but ATK has not returned to the Cabin to complete the aforementioned portions of the Projects.

61.     Since the early Spring of 2026, Torrey has also identified additional improperly completed portions of the Projects, which were only discovered much later after ATK completed its work.

62.     Torrey has discovered defects that were not apparent when ATK completed its work, including that lumber purchased but not yet used on the Dock or Deck has remained at the Cabin uncovered and open to the elements since the lumber was purchased; that Dock and Deck boards are lifting around the Cabin property, including because some appear not to have been secured to the underlying supports; and that the quality of the lumber used on the Projects appears to be substandard as the lumber has split and cracked after only one winter in Wisconsin.

### COUNT I: THEFT BY CONTRACTOR IN VIOLATION OF WIS. STAT. § 779.02(5) (Against All Defendants)

63.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

64.     As above, ATK—as a contractor on each Project—was advanced funds to benefit Plaintiff and improve the Cabin through each of the Projects.

65.     As such, ATK was obligated to hold these funds in trust for the benefit of Plaintiff but failed to do so.

66.     The Wisconsin statutes thus supply Plaintiff with a remedy for Defendants' wrongdoings by way of a theft by contractor claim, which states in relevant party as follows:

> The proceeds of any mortgage on land paid to any prime contractor . . . for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all claims have been paid, and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor . . . for any other purpose until all claims, except those which are subject to a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor . . . of moneys so misappropriated and is punishable under s. 943.20. If the prime contractor . . . is a corporation . . . such misappropriation also shall be deemed theft by the officers, directors, members, partners, or agents responsible for the misappropriation. Any such misappropriated moneys which have been received as salary, dividend, loan

10

repayment, capital distribution or otherwise by any shareholder, member, or partner not responsible for the misappropriation shall be a civil liability of that person and may be recovered and restored to the trust fund specified in this subsection by action brought by any interested party for that purpose.

Wis. Stat. § 779.02(5).

67.     Applied here, ATK entered separate contracts with Plaintiff for the improvement of the Cabin; namely the Deck, Main Dock, and Marine Dock.

68.     ATK received money from Plaintiff for the improvement of the Cabin pursuant to each contract.

69.     Plaintiff owns the Cabin.

70.     On information and belief, instead of using these funds to purchase the requisite equipment and complete the Projects, ATK intentionally used these monies for a purpose other than for what they were earmarked.

71.     ATK's use of these funds for its own purposes was without Plaintiff's consent and contrary to its authority.

72.     Lumber meant for the Projects was left unused on Plaintiff's property and ATK has not completed the work contemplated in the parties' contract.

73.     Nonetheless, Plaintiff has paid ATK in full for the Projects.

74.     Thus, as work remains to be completed and materials for the Projects have not been utilized, but Plaintiff has paid ATK in full, the funds entrusted to ATK under the Project agreements has not been fully spent on the Projects.

75.     Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

11

76.     Further, Torrey worked with Orman to secure the Project agreements, make payments on the Projects, and communicate problems with the Projects.

77.     Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

78.     Indeed, because corporate agents are responsible for their own misconduct when acting on behalf of their principal, Orman is personally liable for their actions; misconduct for which ATK is also vicariously liable because Orman was acting within the scope of his agency when committing this malfeasance.

79.     Plaintiff has therefore suffered a monetary loss as a result of Defendants' misappropriation of the funds on the Projects in an amount to be determined at trial.

### COUNT II: STATUTORY VIOLATION OF WIS. STAT. § 100.20 & WIS. ADMIN. CODE ATCP § 110.02
### (Against All Defendants)

80.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

81.     Section 100.20 of the Wisconsin Statutes ("Section 100.20") prohibits individuals and entities from engaging in unfair trade practices. Wis. Stat. § 100.20(1).

82.     To that end, Section 100.20 authorizes Wisconsin's Department of Agriculture, Trade and Consumer Protection ("DATCP") to "issue general orders forbidding methods of competition in business or trade practices in business which are determined by the [DATCP] to be unfair." *Id.* § 100.20(2)(a).

83.     The statute vests any person who suffers pecuniary loss stemming from a violation of "any order issued under [Section 100.20]" with a cause of action to sue for damages in a court of competent jurisdiction. *Id.* § 100.20(5).

84.     Relevant here, Chapter ATCP 110 of Wisconsin's Administrative Code ("ATCP 110") specifies certain home improvement practices to which sellers must adhere when making or selling home improvements. *See* Wis. Admin. Code ATCP §§ 110.01 *et seq.*

85.     ATCP 110 was adopted under the authority of Section 100.20(2) and is enforceable through a private right of action pursuant to Section 100.20(5). Thus, Plaintiff may enforce the mandates of ATCP 110 by way of a Section 100.20(5) claim.

86.     ATK engages in the "business of making or selling home improvements" and therefore qualifies as a "seller" under ATCP 110. Wis. Admin. Code ATCP § 110.01(5).

87.     As an officer, representative, agent, and/or employee of ATK, Orman qualifies as a seller under ATCP 110 as well and is personally liable for his actions taken on behalf of ATK that violate ATCP 110. *Id.*; *see Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 41, 308 Wis. 2d 103, 746 N.W.2d 762.

88.     Here, Plaintiff was the buyer, as the owner of the Cabin, to which the Projects pertained. *See* Wis. Admin. Code ATCP § 110.01(1)(a).

89.     The Projects were also home improvements under ATCP 110 as they involved "remodeling, altering, repairing, painting, or modernizing of residential . . . property, or the making of additions thereto, and includes . . . the construction, installation, replacement, improvement, or repair of . . . terraces, patios, landscaping . . . and other changes, repairs, or improvements made in or on, attached to, or forming a part of, the residential . . . property." Wis. Admin. Code ATCP § 110.01(2).

A.      Violations of Wis. Admin. Code ATCP § 110.02(2)

90.    ATCP § 110.02(2) prohibits sellers from engaging in unfair methods of competition or unfair trade practices, including by:

> (2) PRODUCTION AND MATERIAL REPRESENTATIONS. Misrepresent[ing] directly or by implication that products or materials to be used in the home improvement:
>
> *    *    *
>
> (c) Are of a specific size, weight, grade, or quality, or possess any other distinguishing characteristics or features.
>
> *    *    *
>
> (g) Are of sufficient size, capacity, character, or nature to do the job expected or represented.
>
> (h) Are or will be custom–built or specially designed for the needs of the buyer.

Wis. Admin. Code ATCP §§ 110.02(2)(c), (g), (h).

91.    Here, the agreements for the Marine Dock Project specified that 6x6 foot posts would be used to construct the Marine Dock pursuant to Torrey's direction that the dock be constructed to the specifications of the existing Main Dock, particularly to ensure the stability of the Marine Dock.

92.    Although the agreement for the Marine Dock Project stated that 6x6 foot posts would be used, ATK used 4x4 foot posts instead.

93.    ATK did not inform Torrey that it would use 4x4 foot posts in place of the 6x6 foot posts the parties agreed upon.

94.    Torrey did not approve the use of 4x4 foot posts in place of 6x6 foot posts for the Marine Dock.

14

95.    ATK's representations regarding the use of 6x6 foot posts concerned the size, capacity, character, and nature of the products to be used on the Marine Dock, including because of their capacity to support the Marine Dock.

96.    Torrey worked with Orman to secure the Marine Dock Project agreement, make payments on the Marine Dock Project, and communicate problems with the Marine Dock Project.

97.    Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

98.    Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

99.    Defendants' misrepresentations about the posts to be used on the Docks constitute violations of ATCP § 110.02.

B.    **Violations of Wis. Admin. Code ATCP § 110.02(3)**

100.    ATCP § 110.02(3) prohibits sellers from engaging in unfair methods of competition or unfair trade practices, including by:

(3) BAIT SELLING.

(a) Offer[ing] or represent[ing] specific products or materials as being for sale, where the purpose or effect of the offer or representation is not to sell as represented but to bait or entice the buyer into the purchase of other or higher priced substitute products or materials.

*    *    *

(c) Refus[ing] to show, demonstrate, or sell products or materials as advertised, offered, or represented as being for sale.

(e) Failing to have available a quantity of the advertised product sufficient to meet reasonably anticipated demands.

Wis. Admin. Code ATCP §§ 110.02(3)(a), (c), (e).

101.    Here, ATK included the use of 6x6 foot posts on the Marine Dock Project agreement at Torrey's request.

102.    Instead of using 6x6 foot posts as specified, ATK used 4x4 foot posts.

103.    On information and belief, 6x6 foot posts are more expensive than 4x4 foot posts.

104.    Torrey paid in advance, and later in full, for the use of 6x6 foot posts on the Marine Dock.

105.    ATK represented that it would use 6x6 foot posts to construct the Marine Dock and accepted Torrey's payment knowing that it would use 4x4 foot posts instead.

106.    ATK did not inform Torrey that it would use 4x4 foot posts in place of the 6x6 foot posts the parties agreed upon.

107.    Torrey did not approve the use of 4x4 foot posts in place of 6x6 foot posts for the Marine Dock.

108.    On information and belief, 4x4 foot posts were used on the Marine Dock Project instead of 6x6 foot posts either because (i) ATK could not source 6x6 foot posts or (ii) ATK intended to increase the contract price for the Marine Dock Project without informing Torrey of the price difference between the posts.

109.    ATK did not intend on using 6x6 foot posts for the Marine Dock Project.

110.    Torrey worked with Orman to secure the Marine Dock Project agreement, make payments on the Marine Dock Project, and communicate problems with the Marine Dock Project

111.    Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

112.    Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

113.    Defendants' representations to Torrey regarding the use of 6x6 foot posts and subsequent failure to have these materials available and to use these materials when building the Marine Dock constitutes violations of ATCP § 110.02.

C.    Violations of Wis. Admin. Code ATCP § 110.02(6)

114.    ATCP § 110.02(6) prohibits sellers from engaging in unfair methods of competition or unfair trade practices, including by:

(6) PRICE AND FINANCING.

*    *    *

(f) Fail[ing] to disclose that the offered or contract price does not include delivery or installation, or that other requirements must be fulfilled by the buyer as a condition to the performance of labor, services, or the furnishing of products or materials at the offered or contract price.

*    *    *

(k) Increase or falsify the contract price . . .

Wis. Admin. Code ATCP §§ 110.02(6)(f), (k).

115.    As stated herein, ATK provided Torrey with quotes for the Projects that did not specify the cost or hourly rate of labor that would be required to complete the Projects.

116.    Torrey paid the full amount owed for the work anticipated to be completed on the Projects.

117.    ATK has not fully or properly completed the Projects.

118.    Further, as above, ATK's inclusion of 6x6 foot posts on the agreement and in the price for the Marine Dock Project falsely stated the price to complete the Marine Dock Project as

17

ATK used 4x4 foot posts to complete the Marine Dock and, on information and belief, 6x6 foot posts are more expensive than 4x4 foot posts.

119.    Accordingly, ATK increased and/or falsified the cost of the Marine Dock Project.

120.    Torrey worked with Orman to secure the Project agreements, make payments on the Projects, and communicate problems with the Projects.

121.    Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

122.    Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

123.    Defendants' failure to include the cost of labor on the Projects and conduct to increase and/or falsify the cost of the Marine Dock Project constitute violations of ATCP § 110.02.

**D.    Violations of Wis. Admin. Code ATCP § 110.02(7)**

124.    ATCP § 110.02(7) prohibits sellers from engaging in unfair methods of competition or unfair trade practices, including by:

(7) PERFORMANCE.

*    *    *

(b) Solicit[ing] or accept[ing] any payment for home improvement materials or services which the seller does not intend to provide according to the terms of the home improvement contract, or which the seller has reason to believe will not be provided according to the terms of the contract.

Wis. Admin. Code ATCP § 110.02(7)(b).

125.    Here, ATK included the use of 6x6 foot posts on the Marine Dock at Torrey's request.

126.    Instead of using 6x6 foot posts as specified, ATK used 4x4 foot posts.

127.    On information and belief, 6x6 foot posts are more expensive than 4x4 foot posts.

128.    Torrey paid in advance, and later in full, for the use of 6x6 foot posts on the Marine Dock.

129.    ATK represented that it would use 6x6 foot posts to construct the Marine Dock and accepted Torrey's payment knowing that it would use 4x4 foot posts instead.

130.    ATK did not inform Torrey that it would use 4x4 foot posts in place of the 6x6 foot posts the parties agreed upon.

131.    Torrey did not approve the use of 4x4 foot posts in place of 6x6 foot posts for the Marine Dock.

132.    On information and belief, ATK did not intend on using 6x6 foot posts for the Marine Dock Project.

133.    Further, ATK agreed to replace boards on the Deck and pressure wash, sand, and stain the Deck.

134.    ATK has failed to complete the staining process on the Deck.

135.    Torrey paid in advance, and later in full, for the Deck Project.

136.    ATK accepted Torrey's advanced and final payments on the Deck Project.

137.    On information and belief, ATK did not intend on returning in the Spring of 2026 to fully and finally complete the Projects.

138.    Torrey worked with Orman to secure the Marine Dock and Deck Project agreements, make payments on the Marine Dock and Deck Projects, and communicate problems with the Marine Dock and Deck Projects.

139.    Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

140.    Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

141.    Defendants' acceptance of Torrey's payments on the Marine Dock and Deck Projects when it did not intend on completing the Marine Dock and Deck Projects to the identified specifications constitutes a violation of ATCP § 110.02.

**E.    Violations of Wis. Admin. Code ATCP § 110.02(9)**

142.    ATCP § 110.02(9) prohibits sellers from engaging in unfair methods of competition or unfair trade practices, including by:

(9) SALES REPRESENTATIONS.

*    *    *

(b) Fail[ing] to make any statement of fact, qualification, or explanation if the omission of such statement, qualification, or explanation causes an advertisement, announcement, statement, or representation to be false, deceptive, or misleading.

Wis. Admin. Code ATCP § 110.02(9)(b).

143.    Here, ATK agreed with Torrey to use 6x6 foot posts on the Marine Dock.

144.    Torrey paid ATK for 6x6 foot posts pursuant to the Marine Dock Project agreements.

145.    ATK accepted Torrey's payments on the Marine Dock Project.

146.    ATK failed to inform Torrey that it would use 4x4 foot posts instead of 6x6 foot posts on the Marine Dock.

147.    Torrey did not approve the use of 4x4 foot posts in place of 6x6 foot posts for the Marine Dock.

148.    Torrey worked with Orman to secure the Marine Dock Project agreements, make payments on the Marine Dock Project, and communicate problems with the Marine Dock Project.

149.    Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

150.    Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

151.    Defendants' failure to inform Torrey that it would use 4x4 foot posts on the Marine Dock constitutes a violation of ATCP § 110.02.

F.    Violations of Wis. Admin. Code ATCP § 110.02(11)

152.    ATCP § 110.02(11) prohibits sellers from engaging in unfair methods of competition or unfair trade practices, including by:

> (11) MISREPRESENTATIONS; GENERAL. Mak[ing] any false, deceptive, or misleading representation in order to induce any person to enter into a home improvement contract, to obtain or keep any payment under a home improvement contract, or to delay performance under a home improvement contract.

Wis. Admin. Code ATCP § 110.02(11).

153.    Here, ATK represented that it would use 6x6 foot posts to build the Marine Dock.

154.    Torrey paid ATK for the use of 6x6 foot posts to build the Marine Dock pursuant to the Marine Dock Project agreement.

155.    ATK accepted Torrey's full payments on the Marine Dock Project.

156.    ATK did not inform Torrey that it would use 4x4 foot posts instead of 6x6 foot posts on the Marine Dock.

157.    Torrey did not approve the use of 4x4 foot posts in place of 6x6 foot posts for the Marine Dock.

21

158.    Torrey worked with Orman to secure the Marine Dock Project agreement, make payments on the Marine Dock Project, and communicate problems with the Marine Dock Project.

159.    Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

160.    Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

161.    Defendants' failure to inform Torrey regarding the use of 4x4 foot posts on the Marine Dock constitutes a violation of ATCP § 110.02.

162.    As a result of Defendants' violations of ATCP 110 in Section A–F above, Plaintiff has suffered pecuniary loss for which Defendants are liable such that Plaintiff may recoup the statutorily prescribed remedies available under Wis. Stat. § 100.20 and Wis. Admin. Code ATCP § 110.07(2).

### COUNT III: STATUTORY VIOLATION OF WIS. STAT. § 100.20 & WIS. ADMIN. CODE ATCP § 110.023
### (Against All Defendants)

163.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

164.    Apart from a seller's obligations pursuant to ATCP § 110.02, ATCP 110 also prohibits sellers from:

> (1) SUBSTITUTING PRODUCTS OR MATERIALS' ALTERING THE WRITTEN CONTRACT . . . substitut[ing] products or materials for those specified in the home improvement contract, or for those which the seller represented would be used in the home improvement, without the prior consent of the buyer.

Wis. Admin. Code ATCP § 110.023(1).

165.    Here, the agreement for the Marine Dock Project specified that 6x6 foot posts would be used to construct the Marine Dock.

166. Torrey paid an advanced deposit and later the full amount owed on the Marine Dock Project, which ATK accepted.

167. ATK used 4x4 foot posts instead of the 6x6 foot posts specified in the agreement.

168. Torrey did not consent to the use of 4x4 foot posts for the Marine Dock.

169. In fact, Torrey specifically requested that 6x6 foot posts be used to construct the Marine Dock, as the existing Main Dock already used 6x6 foot posts.

170. Torrey worked with Orman to secure the Marine Dock Project agreement, make payments on the Marine Dock Project, and communicate problems with the Marine Dock Project.

171. As an officer, representative, agent, and/or employee of ATK, Orman qualifies as a seller under ATCP 110 as well and is personally liable for his actions taken on behalf of ATK that violate ATCP 110. Wis. Stat. Admin. Code ATCP 110.01(5); *see Stuart*, *supra*.

172. Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

173. Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

174. Defendants' substitution of 4x4 foot posts in place of 6x6 foot posts, as originally agreed for the Marine Dock Project, without Torrey's prior consent constitutes a violation of ATCP § 110.023.

175. As a result of Defendants' violations of ATCP 110, Plaintiff has suffered pecuniary loss for which Defendants are liable such that Plaintiff may recoup the statutorily prescribed remedies available under Wis. Stat. § 100.20 and Wis. Admin. Code ATCP § 110.07(2).

23

## COUNT IV: STATUTORY VIOLATION OF WIS. STAT. § 100.20 &
## WIS. ADMIN. CODE ATCP § 110.027
### (Against All Defendants)

176.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

177.    Apart from a seller's obligations pursuant to ATCP § 110.023, ATCP 110 also requires the seller to provide timely notice of any delay in contract performance:

DELAY IN CONTRACT PERFORMANCE. (1) A seller must give the buyer timely notice of any impending delay in the home improvement contract performance if performance will be delayed beyond a deadline specified in the home improvement contract. The notice shall specify any reasons for the delay and shall specify new proposed deadlines by which the seller will begin and complete the work. If a written home improvement contract is required under s. ATCP 110.05 (1) or the buyer signs a written contract, no change in performance deadlines is effective unless the buyer agrees in writing to the change.

Wis. Admin. Code ATCP § 110.027(1).

178.    Here, ATK and Torrey agreed to the Deck Project in or around February 2025.

179.    Torrey paid ATK an advance deposit for the Deck Project, which included pressure washing, sanding, and staining the Deck, which ATK accepted.

180.    The agreement for the Deck Project did not include a date for work to begin or be completed, but was required to under ATCP § 110.05(1) as an advanced deposit was required.

181.    As such, no change in the performance deadline was effective unless Torrey agreed in writing, which he did not do.

182.    Nonetheless, after accepting Torrey's money, ATK informed Torrey that the staining process could not occur for approximately another year as the lumber to be stained needed to dry and/or cure before it could be stained.

24

183. To the extent a deadline was included in the Deck Project agreement, Torrey did not receive timely notice of the delay as the requirement that lumber be dried prior to staining was known or should have been known by ATK at the time of contracting with Torrey.

184. As such, no timely notice of a year long delay was provided to Torrey.

185. Torrey worked with Orman to secure the Deck Project agreement, make payments on the Deck Project, and communicate problems with the Deck Project.

186. As an officer, representative, agent, and/or employee of ATK, Orman qualifies as a seller under ATCP 110 as well and is personally liable for his actions taken on behalf of ATK that violate ATCP 110. Wis. Stat. Admin. Code ATCP 110.01(5); *see Stuart*, *supra*.

187. Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

188. Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

189. Defendants' delay in completing the pressure washing, sanding, and staining of the Deck without timely notice or approval from Torrey constitutes a violation of ATCP § 110.027.

190. As a result of Defendants' violations of ATCP 110, Plaintiff has suffered pecuniary loss for which Defendants are liable such that Plaintiff may recoup the statutorily prescribed remedies available under Wis. Stat. § 100.20 and Wis. Admin. Code ATCP § 110.07(2).

**COUNT V: STATUTORY VIOLATION OF WIS. STAT. § 100.20 &
WIS. ADMIN. CODE ATCP § 110.04
(Against All Defendants)**

191. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

192. Apart from a seller's obligations pursuant to ATCP § 110.027, ATCP 110 also requires that all oral warranties be in writing:

25

> WARRANTIES. (1) A seller shall give a buyer a copy of every written warranty made with respect to labor, services, products, or materials furnished in connection with a home improvement. If a seller makes any oral warranty, the seller shall document that warranty in writing and give a copy to the buyer. The seller shall provide all warranty documents to the buyer at the time the buyer enters into a home improvement contract . . .

Wis. Admin. Code ATCP § 110.04(1).

193. Here, ATK's website lists a one year workmanship warranty.

194. On information and belief, the one year workmanship warranty applied to each of the Projects.

195. Torrey did not receive documents outlining this one year workmanship warranty from ATK at the time of contracting on each of the Projects, or at any other time.

196. Torrey worked with Orman to secure the Project agreements, make payments on the Projects, and communicate problems with the Projects.

197. As an officer, representative, agent, and/or employee of ATK, Orman qualifies as a seller under ATCP 110 as well and is personally liable for his actions taken on behalf of ATK that violate ATCP 110. Wis. Stat. Admin. Code ATCP 110.01(5); *see Stuart, supra*.

198. Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

199. Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

200. Defendants' failure to provide Torrey with a copy of its one year workmanship warranty as identified on its website constitutes a violation of ATCP § 110.04.

201. As a result of Defendants' violations of ATCP 110, Plaintiff has suffered pecuniary loss for which Defendants are liable such that Plaintiff may recoup the statutorily prescribed remedies available under Wis. Stat. § 100.20 and Wis. Admin. Code ATCP § 110.07(2).

## COUNT VI: STATUTORY VIOLATION OF WIS. STAT. § 100.20 & WIS. ADMIN. CODE ATCP § 110.05
### (Against All Defendants)

202. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

203. Apart from a seller's obligations pursuant to ATCP § 110.04, ATCP 110 also mandates certain requirements for home improvement contracts:

HOME IMPROVEMENT CONTRACT REQUIREMENTS. (1) The following home improvement contracts and all changes in the terms and conditions thereof, shall be in writing:

(a) Contracts requiring any payment of money or other consideration by the buyer prior to completion of the seller's obligation under the contract.

*    *    *

(2) If sub. (1) requires a written home improvement contract or the buyer signs a written contract, the written contract shall be signed by all parties and shall clearly, accurately and legibly set forth all material terms and conditions of the contract, including:

*    *    *

(b) A description of the work to be done and the principal products and materials to be used or installed in performance of the contract. The description shall include, where applicable, the name, make, size, capacity, model, and model year of principal products or fixtures to be installed, and the type, grade, quality, size, or quantity of principal building or construction materials to be used. Where specific representations are made that certain types of products or materials will be used, or the buyer has specified that certain types of products or materials are to be used, a description of such products or materials shall be clearly set forth in the contract.

(c) The total price or other consideration to be paid by the buyer, including all finance charges. If the contract is one for time and materials the hourly rate for labor and all other terms and conditions of the contract affecting price shall be clearly stated.

(d) The dates or time period on or within which the work is to begin and be completed by the seller.

Wis. Admin. Code ATCP §§ 110.05(1), (2).

204.    Here, each of the agreements for the Projects required Torrey to pay ATK an advance deposit for the performance of the work.

205.    Pursuant to ATCP § 110.05(1)(a), the Project agreements were therefore required to be in writing and include a series of material terms and conditions identified in the statute.

206.    The Project agreements did not include a cost or hourly rate for labor on each of the Projects.

207.    The Project agreements did not include dates within which the work for each of the Projects would begin and be completed.

208.    Further, although the Marine Dock Project included specifications regarding the size of posts to be used, ATK did not follow its own agreement listing the use of 6x6 foot posts, despite agreeing to this and representing to Torrey that 6x6 foot posts would be used.

209.    Torrey worked with Orman to secure the Project agreements, make payments on the Projects, and communicate problems with the Projects.

210.    As an officer, representative, agent, and/or employee of ATK, Orman qualifies as a seller under ATCP 110 as well and is personally liable for his actions taken on behalf of ATK that violate ATCP 110. Wis. Stat. Admin. Code ATCP 110.01(5); *see Stuart, supra.*

211.    Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

212.    Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

28

213.    Defendants' failure to provide Torrey with written contracts on each of the Projects that comply with ATCP § 110.05(2) constitutes violations of ATCP § 110.05.

214.    As a result of Defendants' violations of ATCP 110, Plaintiff has suffered pecuniary loss for which Defendants are liable such that Plaintiff may recoup the statutorily prescribed remedies available under Wis. Stat. § 100.20 and Wis. Admin. Code ATCP § 110.07(2).

### COUNT VII: STATUTORY VIOLATION OF WIS. STAT. § 100.20 & WIS. ADMIN. CODE ATCP § 110.07
### (Against All Defendants)

215.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

216.    Apart from a seller's obligations pursuant to ATCP § 110.05, ATCP 110 also identifies under which conditions a buyer can exercise their statutory remedies:

(1) CONDITIONS WARRANTING EXERCISE OF BUYER'S REMEDIES. If, under a home improvement contract, a buyer pays a seller for any home improvement materials or services before the seller provides those materials or services to the buyer, the buyer may proceed under sub. (2) if any of the following occurs:

*        *        *

(b) The seller fails to give buyer notice of an impending delay as required under s. ATCP 110.027 (1), or fails to obtain the buyer's agreement to a new performance deadline.

(c) The buyer believes that the seller has failed to provide the materials or services in a timely manner, and the home improvement contract specifies no deadline for the seller to provide the materials or services.

Wis. Admin. Code ATCP § 110.07(1).

217.    Here, the requisite conditions exist for Torrey to exercise his rights under ATCP §110.07(2).

218.    Torrey paid advanced deposits to ATK for each of the Projects before ATK began work on each of the Projects.

219.    ATK has failed to fully and properly provide materials and services in a timely manner under the Deck Project, particularly as that agreement does not specify a time for completion of the work.

220.    Indeed, although ATK represented to Torrey that it would return in the Spring of 2026 to complete the staining process on the Deck, ATK has yet to return to the Cabin.

221.    Further, ATK failed to give timely notice and/or obtain approval from Torrey for the delay in completion of the Deck Project, as above.

222.    As for the Dock Projects, no time period for completion was written in the agreements.

223.    ATK has not provided the agreed upon materials, the 6x6 foot posts, or services, installation by a jet professional, in a timely manner.

224.    Torrey has identified the outstanding items to be completed on all of the Projects and communicated these items to ATK, but ATK has failed to provide the materials and services agreed to in the Project agreements.

225.    Torrey worked with Orman to secure the Project agreements, make payments on the Projects, and communicate problems with the Projects.

226.    As an officer, representative, agent, and/or employee of ATK, Orman qualifies as a seller under ATCP 110 as well and is personally liable for his actions taken on behalf of ATK that violate ATCP 110. Wis. Stat. Admin. Code ATCP 110.01(5); *see Stuart*, *supra*.

227.    Because ATK is a corporation, its misappropriation of these funds also amounts to theft by Orman—as ATK's agent responsible for the misappropriation.

228.    Consequently, Orman is also liable for ATK's misappropriation of these funds because, on information and belief, he is the individual who committed these acts.

229.    Defendants' acts and omissions on the Projects satisfy the conditions necessary for Torrey to exercise his remedies under ATCP § 110.07.

230.    As a result of Defendants' violations of ATCP 110, Plaintiff has suffered pecuniary loss for which Defendants are liable such that Plaintiff may recoup the statutorily prescribed remedies available under Wis. Stat. § 100.20 and Wis. Admin. Code ATCP § 110.07(2).

## COUNT VIII: BREACH OF CONTRACT
### (Against ATK)

231.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

232.    Each Project quote ATK offered and Torrey accepted constitute separate contracts for ATK to provide the services outlined in the quotes to Torrey in exchange for Torrey's payment of the price identified in each contract.

233.    Torrey performed all obligations under the Projects' contract by timely paying ATK for its work.

234.    ATK failed to perform its obligations under the contracts by not completing the Projects and completing the Projects with substandard workmanship and materials.

235.    In early Spring 2026, Torrey noticed defects in ATK's work at the property that had not existed at the time ATK completed its work on the Projects, as described herein.

236.    ATK's failure to complete the Projects to a standard level of workmanship constitutes a breach of the Projects' contracts.

237.    Due to ATK's failures to perform its obligations under the contracts, Torrey has been damaged in an amount to be determined at trial.

31

**WHEREFORE**, the Plaintiff respectfully requests the following relief, as allowed pursuant to the above-referenced facts, the applicable case law, and the governing statutes:

**(A)** An award for Plaintiff that includes all actual, compensatory, consequential, ancillary, exemplary, punitive, or other damages as allowed by Wisconsin or other law, and statutory damages and penalties, including interest thereon, in an amount to be determined at trial;

**(B)** Recission of the Deck and Dock Project contracts pursuant to Wis. Admin. Code ATCP § 110.07(2)(a);

**(C)** Return of all payments Defendant has not yet expended on the Deck and Dock Projects pursuant to Wis. Admin. Code ATCP § 110.07(2)(b);

**(D)** An order requiring Defendant to provide a written accounting for all payments that Plaintiff made to Defendant detailing how all payments were used by the seller pursuant to Wis. Admin. Code ATCP § 110.07(2)(d);

**(E)** An award for Plaintiff's pecuniary loss pursuant to Wis. Stat. § 100.20(5);

**(F)** Damages equal to two times Plaintiff's pecuniary loss pursuant to Wis. Stat. § 100.20(5);

**(G)** Costs and reasonable attorneys' fees pursuant to Wis. Stat. § 100.20(5);

**(H)** Any other relief the Court deems just and equitable under the circumstances.

*PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE*

Dated this 4th day of August, 2026.

BARTON CERJAK S.C.

*/s/ Sofia R. Nikolic*
James B. Barton
Email: *jbb@bartoncerjak.com*
Sofia R. Nikolic
Email: *srn@bartoncerjak.com*
313 North Plankinton Ave., Ste. 207
Milwaukee, WI 53203
T: (414) 877-0690
F: (414) 877-3039

*Attorneys for Plaintiff William Torrey*